UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

_____

| | |
|---|---|
| EMANUEL V. BRAMLETT, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 05-2200 |
| | ) |
| CHAMPAIGN POLICE DEPARTMENT, | ) |
| OFFICER GREGORY MANZANA, | ) |
| OFFICER JAMES BEDNARZ, OFFICER | ) |
| THOMAS PETRILLI, | ) |
| | ) |
|     Defendants. | ) |

_____

**OPINION**
_____

On October 5, 2005, Plaintiff Emanuel Bramlett filed a pro se complaint against Defendants Champaign Police Department, Officer Gregory Manzana, Officer James Bednarz, and Officer James Petrilli pursuant to 42 U.S.C. § 1983 alleging that he was falsely arrested and subjected to excessive force in connection with his arrest on the charge of aggravated battery on October 26, 2003. On July 26, 2006, Defendants filed a Motion for Summary Judgment (#38), and the matter is now fully briefed. For the reasons that follow, the Motion for Summary Judgment is GRANTED in part and DENIED in part.

FACTS

On the night of October 25, 2003, Plaintiff Emanuel Bramlett attended a party at the Alpha Phi Alpha fraternity house in Champaign, Illinois. Bramlett was not a member of the fraternity, but Bramlett testified at his ensuing criminal trial that there was an open invitation to the party.

Bramlett arrived at the party between 11:30 p.m. on October 25, 2003, and 12:15 a.m. on October 26, 2003. When Bramlett arrived, there were approximately 200 to 300 people outside. People were located in the street, in the front yard of the house, and on the porch. There were approximately 150 people inside the house. The majority of these people was located on the first floor of the house. There were 10 to 15 people located on the staircase leading to the second floor where the bedrooms were located.

Bramlett proceeded to the second floor where he tried to start a conversation with a woman who was going into one of the bedrooms. After the woman left, Bramlett began playing with a dog which was in a cage in the hallway on the second floor. A man approached Bramlett and told him to "step down." A fight ensued between Bramlett and the man. According to Bramlett, the man punched Bramlett although Bramlett is not sure where the punch landed. When Bramlett began defending himself, he was attacked by a group of between 10 and 15 people. These people began punching and kicking Bramlett. The fight led to Bramlett tumbling down the staircase. The fight continued out onto the porch. Bramlett was on the floor of the porch being kicked and punched by the group of people, and Bramlett attempted to get them off of him.

Officers Bednarz and Petrilli of the Champaign Police Department were dispatched to the party at approximately 1:00 a.m. on October 26, 2003. Officer Bednarz was initially asked to block the street with his car due to the large number of people in the area. Bednarz and Petrilli initially tried to monitor the crowd. After the officers had been there approximately 30 minutes, Bednarz heard breaking glass and turned his attention to the front porch of the house. Bednarz and Petrilli then approached the house. Bednarz saw 10 to 15 people involved in a fight coming out the front door of the house. Bednarz went up the stairs of the porch and identified himself, but the fight

continued. Bednarz testified he saw Bramlett on his back on the ground outside of the door kicking at people around him. Bednarz discharged pepper spray into the crowd. After the pepper spray was discharged, those involved in the fight began backing away from each other.

As soon as the punching and kicking stopped, Bramlett was picked up off the ground by Officers Bednarz and Petrilli. Bramlett acknowledges that the police needed to break up the fight. Initially, Bramlett did not realize it was police who had picked him up. Bramlett pleaded with the officers, asking them what was happening. Bednarz testified Bramlett started pulling away from the officers, and Bednarz could feel Bramlett's arms tightening under his clothing. Bednarz then advised Petrilli to handcuff Bramlett. Bednarz further indicated Bramlett was not responding to their commands and would pull his arms in the opposite way the officers were directing them. Petrilli also testified that Bramlett was verbally and physically resistant. Bramlett admits he may have struggled in the first few seconds after being picked up off the porch.

Officer Manzana had been on patrol at the time. Manzana parked his car and approached the house where he observed Officers Bednarz and Petrilli. Manzana testified that he observed Bramlett backing away from Bednarz and Petrilli and keeping his arms from them. Manzana assisted Bednarz and Petrilli in handcuffing Bramlett. Manzana testified that Bramlett was yelling and flailing his arms. After he was handcuffed, Bramlett was taken down the stairs from the porch and towards the police squad car.

Officer Bednarz testified Bramlett did not cooperate when he was being led to the squad car. Manzana walked on the left side of Bramlett, and Bednarz walked on the right side of Bramlett. Bednarz testified that the officers had to "tug him" and "lift up on his arms." Bramlett had difficulties walking across the lawn to the squad car, and fell down once. Manzana testified that

Bramlett's eyes were bloodshot and alcohol could be smelled on his breath. Petrilli testified similarly. Bednarz testified that while Bramlett was being walked to the car he heard Officer Manzana say, "He spit on me." Bednarz testified that he then saw Manzana pushing Bramlett's face away from Manzana. Manzana testified that he pushed Bramlett's face away so he could not spit on him again. Bramlett testified that while being walked to the car, Officer Manzana punched him in the left eye. Bramlett is not sure whether Manzana used a closed fist or not. Manzana then stepped away from Bramlett and returned to the porch where he spoke with Jason Carter, a resident of the house. According to Manzana, Carter informed him that Bramlett had been found in an upstairs bedroom of the house and refused to leave when asked.

When the officers and Bramlett reached the squad car, Bramlett was searched for weapons. Officers had to physically spread Bramlett's legs to accomplish this. Petrilli testified Bramlett did not cooperate with the patdown and was difficult to get in the squad car. Bramlett testified Officers Bednarz and Petrilli pushed him into the squad car. Officer Bednarz testified that Bramlett was uncooperative when they put him in the car, and Bednarz had to force Bramlett into the car by putting his hand down on Bramlett's head.

While he was in the squad car being transported to the jail, Bramlett complained that his handcuffs were too tight and that his eyes were burning from the pepper spray discharge. It took approximately 5 to 10 minutes for Bramlett to arrive at the Champaign County Jail. Once Bramlett arrived at the jail, his handcuffs were removed. Bramlett did not request medical treatment at the jail, nor did he seek medical attention after his release. After the events of the night of October 25, 2006, Bramlett suffered a fat lip, a cut on his nose, and a black eye. Bramlett was charged with aggravated battery based upon the allegation that he spit on Officer Manzana while being escorted

to the squad car. Bramlett's first trial on this charge resulted in a hung jury. On retrial, Bramlett was acquitted of the charge.

## ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, the court must decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In reaching this decision, the court must consider the evidence in the light most favorable to the party opposing summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The burden of establishing that no genuine issue of material fact exists rests with the movant. Jakubiec v. Cities Serv. Co., 844 F.2d 470, 473 (7th Cir. 1988). Furthermore, this court is to construe pro se filings liberally. Anderson v. Hardman, 241 F.3d 544, 545 (7th Cir. 2001).

Bramlett's first claim under § 1983 is that there was not sufficient probable cause to support his arrest on October 26, 2003. In their motion for summary judgment, Defendants raise the defense of qualified immunity. Government officials are shielded from liability insofar as their conduct does not violate clearly-established constitutional rights of which a reasonable person should have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Whether a defendant is entitled to a qualified immunity defense depends on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law." Kelley v. Myler, 149 F.3d 641, 648 (7th Cir. 1998). In this context, an officer is entitled to qualified immunity if a reasonable officer could have believed he

had probable cause for the arrest. Sornberger v. City of Knoxville, 434 F.3d 1006, 1014 (7th Cir. 2006). "Probable cause exists if the totality of the facts and circumstances known to a reasonable arresting officer would support the belief that the suspect has committed or is committing a crime." Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004). The court evaluates probable cause "not from the perspective of an omniscient observer, but on the facts as they would have appeared to a reasonable person in the position of the arresting officer." Marshall v. Teske, 284 F.3d 765, 770 (7th Cir. 2002).

Based upon the uncontroverted facts of the case, this court concludes a reasonable person in the position of the arresting officers would have believed he had probable cause to arrest Bramlett for resisting arrest. Officers observed Bramlett involved in a fight with 10 to 15 people on the porch of a house where others were standing. Bramlett was on the ground, kicking those involved in the fight. After Officer Bednarz discharged pepper spray into the crowd, the officers attempted to pick Bramlett off the ground. Bednarz testified Bramlett started pulling away from the officers, and Bednarz could feel Bramlett's arms tightening under his clothing. Bednarz further indicated Bramlett was not responding to their commands and would pull his arms in the opposite way the officers were directing them when they attempted to handcuff him. Petrilli also testified that Bramlett was verbally and physically resistant. Bramlett himself admits he may have struggled with the officers when they attempted to remove him from the porch. Therefore, this court concludes summary judgment is warranted on this portion of Bramlett's complaint.

Plaintiff's claim for violation of his rights under Miranda must also fail. Bramlett alleges a violation of his constitutional rights because he was never advised of his rights under Miranda at the time of his arrest. "[T]he Miranda safeguards come into play whenever a person in custody is

subjected to either express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). Interrogation has been defined as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Innis, 446 U.S. at 301. In the instant case, there is no evidence that the officers questioned Bramlett after he was taken into custody. Therefore, this claim must fail.

Bramlett also raises several claims of excessive force. The determination on an excessive force claim is determined based on whether the officers' actions were "objectively reasonable in light of the circumstances confronting them, without regard to their underlying intent or motivation." Smith v. City of Chicago, 242 F.3d 737, 743 (7th Cir. 2001). The court is to "consider the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight." Smith, 242 F.3d at 743. Furthermore, the court is "balance the amount of force used in relation to the danger posed to the community or to the arresting officers." Smith, 242 F.3d at 743.

Bramlett first asserts that officers used excessive force in that his handcuffs were too tight. Bramlett presents no evidence that he sustained any injury from the handcuffs. Where there is no indication that an "arrest was effected in an unusual or improper manner" an excessive force claim based upon tight handcuffs "has no possible merit." Braun v. Baldwin, 346 F.3d 761, 763 (7th Cir. 2003). This court likewise finds no merit to Bramlett's claim regarding the discharge of the pepper spray. Bramlett concedes that police needed to break up the fight on the porch of the house, which involved between 10 and 15 people. Furthermore, Bramlett did not complain about the burning in his eyes until he was placed in the squad car. It is undisputed that the ride to the police station was

between 5 and 10 minutes. Bramlett makes no allegation that any of the Defendants were present at the jail after his arrival to allow him to wash out his eyes. Furthermore, Bramlett made no requests for medical attention after he arrived. In addition, Bramlett asserts that officers forced him into the squad car without placing their hands on the top of his head to guide him into the car. However, it is undisputed that Bramlett did not voluntarily spread his legs for a pat-down and was initially resistant to arrest. Furthermore, Bramlett does not indicate the officers deliberately injured him while placing him in the squad car. Under these circumstances, this court finds that the officers acted reasonably and finds no basis for a claim of excessive force.

      Bramlett's final excessive force claim stems from his allegation that Officer Manzana punched him in the face after he had been handcuffed and was being walked to the squad car. There is an issue of fact as to whether Bramlett was actually punched. Bramlett testified that Officer Manzana punched him in the left eye, but Bramlett is not sure whether Manzana used a closed fist or not. Bednarz testified that he saw Manzana pushing Bramlett's face away from Manzana. Manzana testified that he "pushed" Bramlett's face away because Bramlett had spit on him in an effort to prevent him from spitting again. This court finds that a reasonable jury could find that, if Manzana punched Bramlett, Manzana's actions were objectively unreasonable in light of the circumstances. In the motion for summary judgment, Manzana argues that the doctrine of judicial estoppel prevents Bramlett from pursuing this claim. In support of this assertion, Manzana points to Bramlett's testimony at his criminal in which Manzana asserts Bramlett testified that all injuries he sustained the night of October 25, 2006, were a result of the fight which police stopped. This court has carefully reviewed Bramlett's testimony both in his deposition and his criminal trial and finds nothing which precludes Bramlett's claim in the instant case. Accordingly, this court

concludes this issue is one which must be left for a jury because there is a factual issue as to whether Manzana punched Bramlett.

As concerns Bramlett's claims against the Champaign Police Department, Bramlett must demonstrate that a policy or custom of the department caused a violation of his rights because the police department cannot be held responsible through the doctrine of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Roach v. City of Evansville, 111 F.3d 544, 548 (7th Cir. 1997). Bramlett can establish such policy or custom in one of three ways: proof of an express policy, a widespread practice constituting custom or usage, or action by a person with final policymaking authority. Bennett v. Roberts, 295 F.3d 687, 699 (7th Cir. 2002). Bramlett has presented no evidence in any of these areas. Accordingly, summary judgment in favor of the Champaign Police Department is appropriate.

IT IS THEREFORE ORDERED:

(1) Defendants' Motion for Summary Judgment (#38) is GRANTED in part and DENIED in part. Defendants Bednarz, Petrilli, and Champaign Police Department are terminated as parties to this action. Only Bramlett's claim against Manzana for excessive force relevant to Bramlett's claim of being punched remains pending.

(2) This case remains set for final pretrial conference on November 21, 2006, at 10:00 a.m. and a jury trial beginning December 4, 2006.

ENTERED this 20th day of September, 2006

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE